[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action wherein the plaintiff seeks a declaratory judgment determining the owner of right, title and interest in a mortgage deed and note which are the subject of this case, referred to herein as the "Satari Mortgage." The plaintiff Glastonbury Bank and Trust Company (GBT) claims it is the 100% owner by virtue of an assignment of the Satari Mortgage to it. The defendants Farmington Investment Company, Inc. (FIC) and FGM Investment Company (FGM) claim that GBT owns only a one-third interest in the Satari Mortgage, with FIC and FGM each owning one-third of the mortgage. Although FIC purported to assign its claimed one-third interest to the Center Bank, Inc., for the sake of clarity we will refer only to FIC in this opinion.
The Court finds and declares that the plaintiff (GBT) is the owner of all right, title and interest in the Satari Mortgage deed and that the named defendant, K. Shah Satari, accordingly, owes to GBT alone all obligations arising out of said mortgage deed and note.
Factual Findings
Prior to the Satari Mortgage, GBT had a commercial loan arrangement with the SE Investment Company (SE) whereby SE had a $300,000.00 line of credit with the bank. The amounts borrowed by SE would be secured by the assignment of various mortgages to GBT. The collateral securing such loans was modified changed or substituted from time to time as appropriate to adequately collateralize the outstanding loans. At all relevant times SE was represented by Attorney Edwin L. Baum who was also one of the partners of SE. Attorney Baum was also the attorney for, and an officer of, the Pearl-Main Investment Company (Pearl-Main), a holding company for SE and other mortgage investment groups, which CT Page 7322 from 1980 to 1990 had loaned out millions of dollars. Attorney Baum had the authority to act for Pearl-Main and SE.
In December 1988 Pearl-Main issuer a $100,000.00 loan to Mr. Satari. The funds for the loan were borrowed from GBT by SE and, as collateral, the mortgage deed and note from Satari to Pearl-Main was assigned to GBT.
In March 1989, the Satari loan was rewritten and increased to $200,000.00 with FGM advancing the additional $100,000.00, although Pearl-Main was named mortgagee. The new mortgage deed and note in the amount of $200,000.00 was assigned to GBT. Attorney Baum, in his letter of transmittal specifically noted that the transaction was an increase over the old mortgage and he assigned the entire deed and note to GBT. (Plaintiff's exhibit 3).
On September 14, 1989, Pearl Main, with the FIC Group providing the funds, added an additional $90,000.00 to the Satari Mortgage for a total loan of $290,000.00. Once again the new note and deed were assigned by Attorney Baum to GBT without limitation and with the specific notation that it was an increase over the previous note and mortgage. (Plaintiff's exhibit 4). The assignments were duly recorded in the land records of the town of Coventry.
By July 1990 SE was in financial trouble and unable to meet its financial obligations. A meeting was held with the various creditors at that time and it was at that July meeting when Attorney Baum discovered that he "mistakenly" assigned the entire Satari Mortgage to the plaintiff bank. It was also about that same time when GBT, being aware of SE's financial difficulties, did an in-depth review and analysis of SE's loan to collateral ratio. At no time between the initial assignment of the Satari Mortgage to July of 1990 did GBT believe it should have been assigned less than 100% of the Satari Mortgage and bank officials were surprised and disturbed about Attorney Baum's claims that the assignments were mistakenly made. (Plaintiff's exhibits 7 and 8). Although the parties had negotiations in an effort to resolve the dispute, a resolution was not achieved. The parties positions remained essentially unchanged, that is GBT claimed it owned 100% of the Satari Mortgage, while the defendants claimed it owned only a one third interest. CT Page 7323
In a futile attempt to change the prior assignments to GBT, on July 27, 1990 Attorney Baum recorded a "corrected" assignment purporting to assign a one-third interest to the plaintiff. This "corrected" assignment, made some ten months after the assignment of the entire $290,000.00 mortgage was not even a re-executed document, but merely a refiled assignment with the change of language indicated.
Thereafter, in December 1990, there was an agreement between the parties that the monthly payment of $3,300.00 which Satari was making to SE would be divided three ways, with GBT accepting one-third or $1100.00. While agreeing to accept this amount, GBT expressly stated it was not waiving any of its right to claim the entire mortgage. (Defendant's exhibit F). The bank accepted this amount as an expedient accommodation as long as its loan to SE was secure and the payments current while they attempted to resolve the dispute. In short, GBT agreed to one-third of the Satari payment, but did not agree to accept a one-third assignment of the mortgage.
Other factual findings will be discussed in connection with special defenses and other issues involved in this case.
Issues
1. Was the one hundred percent assignment of the Satari mortgage to GBT a mutual mistake and thus reformable?
 If, in fact, Attorney Baum mistakenly twice assigned the Satari mortgage to GBT, the evidence clearly leads to the conclusion that any mistake was unilateral. GBT believed and understood that the entire mortgage had been assigned to it, and was entitled to rely on that representation. The subsequent filing of an unexecuted altered version violates the statute of Frauds and is a nullity.
2. Did the plaintiff bank agree to accept or ratify the purported corrected assignment by accepting one-third of the Satari payment?
 This issue is discussed above, and for the reasons stated, the Court finds the plaintiff did not ratify the CT Page 7324 "corrected" assignment of mortgage.
3. Was the assignment of the mortgage invalid due to lack of consideration?
 As stated earlier herein, Pearl-Main was a holding Company for SE and other investment groups. Attorney Baum acted with authority to bind Pearl-Main and SE, as well as other investment syndicates involved with Pearl-Main as their holding company. SE had a revolving loan arrangement with GBT and various mortgages would be assigned and released as needed to keep the loan collateralized. The Satari Mortgage was only a part of that collateral. The consideration for the mortgage assignment was the continuation of the revolving loan which the bank required to be properly secured by collateral. The Court finds there was consideration.
Conclusion
The Court finds and declares that the plaintiff (GBT) is the owner of all right, title and interest in the Satari Mortgage deed and note. Accordingly, any mortgage payment sums being held in escrow by John D. LaBelle, Esq. attorney for K. Shah Satari, shall be disbursed to Glastonbury Bank 
Trust Company, with the exception of $3,345.00, reasonable attorney's fees awarded to LaBelle, LaBelle Moriarity, P.C., attorneys for K. Shah Satari; pursuant to Connecticut General Statutes Section 52-484.
BY THE COURT,
Lawrence C. Klaczak Judge, Superior Court